Sam Pead, Assistant United States Attorney (#11945)
Attorney for the United States
111 South Main Street, Suite 1800
Salt Lake City, Utah  84111
Telephone: (801)524-5682

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | | |
|---|---|---|
| IN THE MATTER OF THE SEARCH OF CELLULAR PHONES RE: DAVIES CURRENTLY IN THE CUSTODY OF VERNAL POLICE DEPARTMENT | ) ) ) ) ) ) ) ) ) ) | CASE NO.  2:25mj140 CMR<br><br>Magistrate Judge Cecilia M. Romero<br><br>AFFIDAVIT IN SUPPORT OF SEARCH<br><br>WARRANT |

I.

**BACKGROUND AND EXPERIENCE**

I, Benjamin Jones, a Special Agent with the Federal Bureau of Investigation, being duly sworn, depose and state:

1. I am a Special Agent with the FBI and have been employed in this capacity since February 2009. Previously I worked for three years with the Salt Lake City, UT Police Department. Currently I am assigned to the Vernal Resident Agency/Salt Lake Field Office of the FBI. In

    this capacity I investigate violations related to crimes of violence, firearms violations, illegal drug violations and many others, including these kinds of violations in Indian Country, as it is defined under federal law.

2. I am presently involved in an ongoing federal criminal investigation of Travis DAVIES for drug trafficking. On 1/30/2025, DAVIES was indicted for one count of Possession of Fentanyl with Intent to Distribute in violation of Title 21 USC 841(a)(1) ("SUBJECT OFFENSE") (case no. 2:25-cr-00023 JNP). This charge was largely the result of an investigation conducted by Officers of the Uintah Basin Strike Force (hereinafter "Strike Force"). The Strike Force is a collection of state officers assigned to drug investigations. On November 9, 2024, the Strike Force conducted a state search warrant at DAVIES' residence and located approximately 296 fentanyl pills, drug paraphernalia, cash and several cellular telephones. As this case was later adopted federally, a federal search warrant is now being sought for two of the phones seized during the execution of this search warrant.

3. Since this affidavit is being submitted for the limited purpose to obtain a search warrant for **SUBJECT PHONE 1** and **SUBJECT PHONE 2** (hereinafter "**SUBJECT PHONES**"), I have not included details of every aspect of the investigation. I learned the matters set out in this affidavit from my review of reports, records, affidavits, etc., through discussions with other law enforcement officers and personnel, and from my own investigation which caused me to believe the information to be true. Dates and times are approximate. Times are in or were converted to Mountain Time (MT) unless otherwise stated.

## II.

## PURPOSE OF AFFIDAVIT

4. This affidavit is in support of an application for a search warrant for the following cellular

devices:

   a. Samsung Phone (black) with charging case currently in Vernal Police Department custody at 374 E Main St, Vernal, Utah, assigned Vernal Police Department evidence item number 125-11 (**SUBJECT PHONE 1**),

   b. Blackview Phone with case currently in Vernal Police Department custody at 374 E Main St, Vernal, Utah, assigned Vernal Police Department evidence item number 125-12 (**SUBJECT PHONE 2**),

5. The purpose of the requested search warrant is to seize (1) property that constitutes evidence of the SUBJECT OFFENSE; (2) contraband, fruits of crime or things otherwise criminally possessed; and (3) property designed or intended for use which is or has been used as a means of committing the SUBJECT OFFENSE from **SUBJECT PHONE 1** and **SUBJECT PHONE 2** for a date range of July 15, 2024 to November 9, 2024. The evidence to be searched for and seized is specifically described in ATTACHMENT B which is attached to and incorporated herein.

### III.
### FACTS ESTABLISHING PROBABLE CAUSE

6. As set forth in more detail below, I believe that there is probable cause that the **SUBJECT PHONES** contain evidence of the **SUBJECT OFFENSE** based on the following facts.

7. On July 15, 2024, and while investigating another case involving DAVIES, the Strike Force conducted a search warrant at the residence of DAVIES at 150 E 750 N #63, Vernal, UT. During the execution of this warrant DAVIES and another woman were present inside the residence. The Strike Force located fentanyl powder, cash, paraphernalia, heroin, methamphetamine, approximately 100 fentanyl pills, and three telephones. A search warrant

later executed on these phones by the Strike Force found photographs of what appeared to be fentanyl pills and heroin. The phone also included text conversations about drug trafficking. In the images below the texts in light blue belong to DAVIES:

| | | | | | | |
|---|---|---|---|---|---|---|
| W24-0315 Item 14 Scan 2024-07-23 08-06-51 | | | | | | |
| | 424 | Good morning brother you how's things coming? Any idea when ya think? *Local User - 06:42:50* | | | 2024/06/22 06:42:50 | Local |
| | 424 | Ok bro *+180151253 86 (King 6-5-24) - 21:48:17* | | | 2024/06/21 21:48:17 | +180 (King |
| | 424 | 2 pure oz 400 blue 1 oz black *Local User - 21:47:25* | | | 2024/06/21 21:47:25 | Local |
| | 424 | Anyways just so you know in cash I have like 5k I wasn't fast enough to draw the money out of cash app but I have plenty I. There *Local User - 21:38:42* | | | 2024/06/21 21:38:42 | Local |

8. In this conversation DAVIES appears to request two ounces of "pure" [note: likely fentanyl powder], 400 fentanyl pills, and one ounce of heroin. Later DAVIES mentioned in the text that he has about $5,000 in cash.

9. Later DAVIES has the following conversation with the same person.

| | | | | | | |
|---|---|---|---|---|---|---|
| | 424 | Hey brother how's it going just wanted to see how things are coming what time you were able to leave so I know when you'll be here let me know thank you<br><br>Local User - 07:23:35 | | | 2024/06/07 07:23:35 | Local |
| | 424 | Got it<br><br>+180151253 86 (King 6-5-24) - 15:52:00 | | | 2024/06/06 15:52:00 | +180 (King |
| | 424 | K 2 full pure 4400 600 blue 2520 2 clear. 400 Half black 450 7770 total<br><br>Local User - 15:51:18 | | | 2024/06/06 15:51:18 | Local |
| | 424 | Ok I got ya let me make it here gotta count stilll I'll do it now<br><br>Local User - 12:53:27 | | | 2024/06/06 12:53:27 | Local |
| | 424 | Yah bro I need take out the product from my homies houses<br><br>+180151253 86 (King 6-5-24) - 12:48:10 | | | 2024/06/06 12:48:10 | +180 (King |

10. Also included in DAVIES' phone were photographs of what appear to be heroin, fentanyl pills, and cash.







11. DAVIES was arrested on state charges after the Strike Force conducted the search warrant. He was later released from custody.

12. In early November, 2024, the Strike Force again received information that DAVIES was selling illegal narcotics. A source contacted DAVIES on his phone and set up a meeting. The source conducted a controlled purchase of fentanyl at DAVIES' residence within 96 hours of November 8, 2024. After the purchase, the source advised Strike Force that DAVIES had one ounce of methamphetamine and approximately 1200 fentanyl pills at his residence. The source advised that DAVIES kept the illegal narcotics near the bathroom attached to his bedroom so he could flush them down the toilet in case law enforcement came to his house.

13. Based on the above information, the Strike Force applied for and received a state search warrant for DAVIES' residence which they executed on November 9, 2024. On this date, Strike Force knocked and announced, waited over 30 seconds, and entered DAVIES' residence. They arrested DAVIES in his hallway near his bedroom. Immediately after the

arrest, a Strike Force agent entered DAVIES' bathroom and noticed that the water in the toilet was still swirling as if it had recently been flushed. DAVIES was the only person present in the residence.

14. During the search of the residence, the Strike Force located two clear baggies containing approximately 294 blue suspected fentanyl pills, a piece of burnt aluminum with two suspected fentanyl pills, drug paraphernalia, a digital scale, and several small baggies. One of the blue pills later tested positive for fentanyl. His current federal case is based on this evidence.

15. Also, on DAVIES' bed, were the **SUBJECT PHONES**. These phones were in close proximity to suspected fentanyl pills and drug paraphernalia.





16. The Strike Force retained the **SUBJECT PHONES** and placed them into a secured locker at the Vernal Police Department second floor detective's evidence room.

17. It is my understanding that at this time, DAVIES has eight (8) open cases for drug trafficking. The date range for these pending cases is from February 26, 2024, to the November 9, 2024, date which is when the search warrant underlying his federal case was

executed and he was arrested. DAVIES also has three prior convictions for drug trafficking crimes.

V.

**TECHNICAL TERMS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS**

**A. Technical Terms**

18. Based on my training, experience, and information told to me by other law enforcement officers, I use the following technical terms to convey the following meanings:

   a. Cellular Device: A cellular device (or mobile telephone, or wireless telephone or cell phone) is a handheld wireless device used for voice and data communication through radio signals. These cellular devices send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages, e-mails, and other electronic communications through various applications; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated

"GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).

Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

19. Based on my training, experience, and information told to me by other law enforcement officers, I know that "smartphones" like the **SUBJECT PHONES**, have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

**B. Electronic Storage and Forensic Analysis**

20. Based on my training, experience, and conversations with agents and officers who analyze cell phones and computers, I know that electronic and cellular devices can store information for long periods of time. Similarly, things that have been viewed via the internet are typically stored for some period of time on the devices like the **SUBJECT PHONES**. This information can sometimes be recovered with forensic tools.

21. *Forensic evidence.* As further described in ATTACHMENT B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence is on the **SUBJECT PHONES** because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer like device is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the

warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

22. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

23. *Manner of execution.* The **SUBJECT PHONES** were seized from DAVIES during his arrest on November 9, 2024 and are currently in the Vernal Police Department detective evidence room in Vernal, UT. I submit, that because the **SUBJECT PHONES** are in evidence, and there are no harms that could result from them being searched at any time it is reasonable for the Court to authorize execution of the warrant at any time in the day or night.

24. *Summary.* Based on DAVIES' history of fentanyl distribution, messages indicating drug distribution on his previous phone, his communications with a confidential source using a phone to set up a drug transaction, and his possession of the **SUBJECT PHONES** on the date of the search warrant undergirding the federal charge here, I believe there is probable cause to believe evidence of the distribution of fentanyl now exists on the **SUBJECT PHONES**.

## VI.
## ITEMS TO BE SEIZED

25. Based on the foregoing, I respectfully submit that there is probable cause to believe that evidence of Possession of Fentanyl with the Intent to Distribute exists during the relevant time period (July 15, 2024 to November 9, 2024), which is detailed in ATTACHMENT B, on the **SUBJECT PHONES** described in ATTACHMENT A.

## VII.

## CONCLUSION

26. Based on the foregoing, there is probable cause to conclude that DAVIES used the **SUBJECT PHONES** around the time of SUBJECT OFFENSE to help in facilitating and communications about the drug trafficking. As such, there is probable cause to conclude that the **SUBJECT PHONES** contain evidence of violations of the SUBJECT OFFENSE.

I declare under penalty of perjury that the above is true and correct to the best of my knowledge and belief.

/s/ Benjamin Jones
BENJAMIN JONES
Special Agent, Federal Bureau of Investigation

Subscribed and sworn to before me on this  12th   day of February 2025.

*Cecilia M. Romero*

HONORABLE CECILIA M. ROMERO
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF UTAH

# ATTACHMENT A

The property to be searched:

c.  A cellular telephone more fully described as Samsung Phone (black) with charging case assigned Vernal Police Department evidence item number 125-11 (**SUBJECT PHONE 1**), currently in Vernal Police Department custody at 374 E Main St, Vernal, Utah.

d.  A cellular telephone more fully described as Blackview Phone with case assigned Vernal Police Department evidence item number 125-12 (**SUBJECT PHONE 2**), currently in Vernal Police Department custody at 374 E Main St, Vernal, Utah.

## ATTACHMENT B

## ITEMS TO BE SEIZED

The following items stored electronically as documents, records, files, communications and other electronic formats in **SUBJECT PHONES, more fully described in attachment A**, between the time period of July 15, 2024 to November 9, 2024, that constitute fruits, instrumentalities, and/or evidence of crimes against the United States of America including Title 21 United States Code (USC) § 841(a)(1) *Possession of Fentanyl with Intent to Distribute*.

As used above, the terms "documents", "records", "files", "communications" and "information" include all of the below items of evidence in whatever form and by whatever means they have been created or stored in **SUBJECT PHONES**:

a.      Information and communications documenting the *Possession of Fentanyl with Intent to Distribute*, communications between coconspirators known and unknown discussing *Possession of Fentanyl with Intent to Distribute* which may be documented in call logs, emails, drafts, notes, applications, text messages, and other means of communication.

b.      Records of internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any internet search engine, and records of user typed web addresses.

c.      Evidence of user attribution showing who used or owned **SUBJECT PHONES** at the

time the items described in this warrant were created, where they used it, edited, or deleted, such as logs, phonebooks, saved user names and passwords, documents, and browsing history.

d.  Pictures, videos, screenshots, and other media and visual evidence of *Possession of Fentanyl with Intent to Distribute*.

e.  GPS and physical locations stored on **SUBJECT PHONES**.